UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **DANIEL W. A.,** | Civil Action No. 20-8494 (SDW) |
| Petitioner, | |
| v. | OPINION |
| **THOMAS DECKER, et al.,** | |
| Respondents. | |

**WIGENTON**, District Judge:

Presently before the Court is the petition for a writ of habeas corpus of Petitioner, Daniel W. A., filed pursuant to 28 U.S.C. § 2241. (ECF No. 1). Also before the Court is Petitioner's motion seeking a temporary restraining order. (ECF No. 39). The Government filed responses to the petition and motion (ECF Nos. 32-33, 42), to which Petitioner has replied. (ECF Nos. 37-38, 43-44). For the following reasons, Petitioner's habeas petition is denied without prejudice and the motion for a restraining order is dismissed without prejudice as moot in light of the denial of the habeas petition.

**I. BACKGROUND**

As this Court explained in denying Petitioner's previous habeas petition

> Petitioner is a native and citizen of Haiti who entered the United States as a lawful permanent resident in March 1982. During his time in this country, Petitioner has amassed a lengthy criminal history including 2003 convictions for promoting prison contraband and unlawful possession of marijuana in New York, a 2006 conviction for criminal possession of marijuana in New York, and a 2013 conviction for robbery in New York. Following Petitioner's release from prison on his robbery conviction, Petitioner was served with a notice to appear and taken into immigration detention

pursuant to 8 U.S.C. § 1226(c) on April 23, 2015. In November 2015, however, Petitioner received a bond hearing in New York pursuant to the Second Circuit's now vacated decision in *Lora v. Shanahan*, 804 F.3d 601 (2015), *vacated*, 138 S. Ct. 1260 (2018), and was released on $1,500 bond. This bond grant was eventually overturned in July 2016 by the Board of Immigration Appeals.

Although Petitioner appeared for several hearings in his removal proceedings prior to his release, upon his release on bond Petitioner ceased to attend his immigration hearings. It appears that Petitioner was briefly committed to a mental hospital in Queens in late November 2015. Based on this commitment, Petitioner failed to attend an immigration hearing on November 30, 2015. Petitioner also failed to attend his next scheduled hearing in April 2016. At that time, Petitioner's previous immigration counsel moved to withdraw from his representation as he did not know where Petitioner was and could not proceed on his behalf as such. An immigration judge granted that request.

During the April 2016 hearing, the immigration judge also raised the issue of Petitioner's competency to proceed with his removal proceedings. The Government at that time informed the immigration judge that it believed that Petitioner's presence was required to make any determination as to his competency, and objected to the immigration judge's desire to administratively close Petitioner's removal proceedings. The Government also expressed at that time that it had learned that Petitioner may have been arrested on weapons charges, though the record does not clearly indicate the nature of that arrest or its eventual result. Another hearing was then held in May 2016, but Petitioner again failed to attend. The immigration judge then required the Government to update the court as to Petitioner's detention status, if any, and ordered the Government to show cause why Petitioner's case should not be administratively closed. The immigration judge held another hearing in January 2017, which Petitioner again failed to attend. At that hearing, the immigration judge refused to conduct removal proceedings in absentia and again adjourned Petitioner's proceedings. Prior to the next scheduled hearing, however, the immigration judge ordered Petitioner's case administratively closed on April 13, 2017. The Government thereafter filed two motions to reopen Petitioner's proceedings which were denied in September 2017 and January 2018.

On March 12, 2018, however, the Government located Petitioner and took him back into immigration detention pursuant to 8 U.S.C. § 1226(c). Having arrested Petitioner, the Government

> filed a third motion to reopen Petitioner's removal proceedings, which was granted on May 11, 2018.

*Daniel A. v. Decker*, No. 18-11572, 2018 WL 6040271, a *1-2 (D.N.J. Nov. 19, 2018) (record citations omitted).

Although Petitioner was initially granted withholding of removal by an immigration judge in December 2018, the Government appealed and the BIA overturned that grant on June 27, 2019. (Document 20 attached to ECF No. 32). Following further hearings, an immigration judge denied Petitioner's applications for relief and ordered him removed on November 21, 2019. (*Id.* at 13). Petitioner appealed once more, and the BIA affirmed his order of removal by dismissing Petitioner's appeal on May 18, 2020. (*Id.*). Although Petitioner thereafter filed both a petition for review with the Second Circuit and a motion to stay his removal pending a decision on the petition for review, the Second Circuit has not yet decided the motion, and briefing of Petitioner's petition for review is in fairly early stages. (*See* Second Circuit Docket No. 20-1724 Docket Sheet). Petitioner is thus subject to an administratively final order of removal which has not been stayed or otherwise overturned, and has thus been detained pursuant to 8 U.S.C. § 1231(a) since May 18, 2020.[1]

---

[1] Although Petitioner is subject to the "Forbearance Agreement" between the Second Circuit and the Government under which the Government has agreed not to remove aliens such as Petitioner until the Second Circuit has an opportunity to address his stay motion and petition for review, this agreement is not a court ordered stay of removal and has no effect upon the finality of Petitioner's order of removal. *See Jean A. v. Dep't of Homeland Sec.*, No. 19-13951, 2019 WL 6318305, at * (D.N.J. Nov. 26, 2019); *see also Telson O. v. Nielsen*, No. 19-3351, 2019 WL 4601525, at *3 (D.N.J. Sept. 23, 2019); *Boyd v. Taylor*, No. 17-3284, 2017 WL 4316098, at *2-3 (D.N.J. Sept. 28, 2017); *Jones v. Aviles*, No. 15-4819, 2016 WL 3965196, at *3 (D.N.J. July 21, 2016); *Severin v. Aviles*, No. 15-3711, 2016 WL 1450550, at *2 (D.N.J. Apr. 12, 2016); *Rones v. Aviles*, No. 15-3798, 2016 WL 158521, at *5 (D.N.J. Jan. 13, 2016); *Brodyak v. Davies*, No. 14-4351, 2015 WL 1197535, at *2 (D.N.J. March 16, 2015). As Petitioner is subject to an administratively final removal order and has not been granted a court-ordered stay of removal, he is detained pursuant to 8 U.S.C. § 1231(a), and has not reverted to pre-final order detention under § 1226(c) at this

Since March 6, 2020, Petitioner has been confined at the Bergen County Jail. (Document 21 attached to ECF No. 32). Upon his initial arrival at the facility, he was subjected to an intake screening during which he reported his mental health issues, including bi-polar disorder. (*Id.*). He was prescribed medication for the issue, which was later adjusted in May 2020 to address certain side effects he was suffering. (*Id.* at 2). Petitioner was also provided monthly follow ups and evaluations with mental health staff. (*Id.*). Although Petitioner initially reported no heart or breathing issues, when he informed staff of having asthma issues and a history of heart issues in June 2020, he was prescribed medication for asthma and the facility began seeking medical records and scheduled an EKG to monitor and treat his heart issues. (*Id.* at 2-3). Throughout his time in the facility, Petitioner has had ample opportunity to raise any medical issues, including during daily visits with nursing staff to receive his medication. (*Id.* at 3).

## II. DISCUSSION

### A. Legal Standard

Under 28 U.S.C. § 2241(c), habeas relief may be extended to a prisoner only when he "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A federal court has jurisdiction over such a petition if the petitioner is "in custody" and the custody is allegedly "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *Maleng v. Cook*, 490 U.S. 488, 490 (1989). As Petitioner is currently detained within this Court's jurisdiction, by a custodian within the Court's jurisdiction, and asserts that his continued detention violates due process, this Court has jurisdiction over his

---

time. *Jean A.* 2019 WL 6318305 at *2-3; *see also* 8 U.S.C. § 1231(a)(1)(B)(ii); *Leslie v. Attorney General of the United States*, 678 F.3d 265, 268-70 (3d Cir. 2012).

claims. *Spencer v. Kemna*, 523 U.S. 1, 7 (1998); *Braden v. 30th Judicial Circuit Court*, 410 U.S. 484, 494-95, 500 (1973); *see also Zadvydas v. Davis*, 533 U.S. 678, 699 (2001).

**B. Analysis**

In his habeas petition, Petitioner argues that his current period of immigration detention has become unconstitutional either because the conditions under which he is currently confined are unduly punitive without a supporting conviction in light of COVID-19, or because the treatment he has received at the facility in which he is detained, when viewed in light of the ongoing COVID-19 situation and Petitioner's pre-existing mental and physical health issues, amounts to deliberate indifference to his medical needs on the part of the Government. In its recent decision in *Hope v. Warden York County Prison*, 972 F.3d 310 (3d Cir. 2020), the Third Circuit has reiterated the standards to be applied to both of these claims. As the Court of Appeals explained in *Hope*, in evaluating whether an alien's conditions of confinement amount to undue punishment, "[t]he touchstone for the constitutionality of detention is whether conditions of confinement are meant to punish." *Id.* at 325-27. In the absence of a showing that the detention facility's staff acted with an express intent to punish the petitioner, determining whether conditions amount to unconstitutional punishment requires that the district court "consider the totality of the circumstances of confinement, including any genuine privations or hardship over an extended period of time, and whether conditions are (1) rationally related to their legitimate purpose or (2) excessive in relation to that purpose." *Id.* In reviewing the conditions and actions of detention officials and their relation to the Government's legitimate interest in detaining aliens awaiting removal, reviewing courts "must acknowledge that practical considerations of detention justify limitations on many privileges and rights," and "ordinarily defer" to the expertise of prison

officials in responding to COVID-19 unless there is "substantial evidence in the record that the officials have exaggerated their response" to the situation. *Id.* Given the Government's strong interest in detaining aliens subject to removal orders and the deference due to the expertise of detention officials, the Third Circuit in *Hope* rejected the argument that detention during the COVID-19 pandemic would amount to unconstitutional punishment where the facility in which the petitioner is housed had taken concrete steps aimed at mitigating the threat posed to detainees, notwithstanding serious pre-existing health conditions which may render those detainees likely to suffer serious complications should they contract the virus. *Id.* 327-29.

Turning to deliberate indifference medical claims, the Third Circuit reaffirmed that "[t]o establish deliberate indifference, [the petitioner] must show the Government knew of *and disregarded* an excessive risk to their health and safety." *Id.* at 329 (citing *Nicini v. Morra*, 212 F.3d 798, 811 (3d Cir. 2000). The Court of Appeals further held that "[t]he context of the Government's conduct is essential to determine whether it shows the requisite deliberate indifference," and that, in evaluating this context, a reviewing court must defer to the expertise of both medical officials and jail administrators and not assume a constitutional defect where concrete action has been taken in response to the COVID-19 pandemic as "rules of due process are not subject to mechanical application in *unfamiliar territory*." *Id.* at 329-30 (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 850 (1998)). Thus, where the Government has taken concrete steps towards ameliorating the medical effects of COVID-19 on a detention facility, a detainee will fall "well short of establishing that the Government was deliberately indifferent toward [his] medical needs" in light of the virus even though the Government cannot entirely "eliminate all risk" of contracting COVID, notwithstanding even serious pre-existing medical conditions which may exacerbate a COVID-19 infection should one occur. *Id.* at 330-31.

Given Petitioner's administratively final order of removal, it is clear that the Government has a legitimate interest in detaining him. As Petitioner has not shown an express intent to punish him on the part of the staff of the facility in which he is detained, to succeed on his claim he must show that his conditions of confinement are arbitrary, purposeless, or excessive and therefore unreasonable in light of the Government's interest in detaining him. *Hope*, 972 F.3d at 325-29; *see also Stevenson v. Carroll*, 495 F.3d 62, 67-68 (3d Cir. 2007). Having reviewed the considerable steps the facility has taken to alleviate the threat COVID-19 poses to detainees such as Petitioner, which are significantly more protective of detainees than those at issue in *Hope*, this Court finds that Petitioner has failed to make such a showing. Steps the Bergen County Jail has taken to alleviate the threat to vulnerable detainees such as Petitioner include operating significantly under maximum capacity, ensuring there are on site or on call doctors and nursing staff at all times, performing intake screenings for all incoming detainees including COVID-19 testing, housing newly arrived detainees in a separate unit, quarantining infected detainees and providing treatment including hospitalization where warranted, the cohorting of those who have been exposed to infected individuals but have not shown symptoms of COVID-19 for fourteen days, increased cleaning and sanitization, and the provision of masks to detainees. (*See* Document 22 attached to ECF No. 32). Taken together, these actions clearly indicate that the facility has taken significant action to address the threat of COVID-19, and that Petitioner's conditions remain rationally related to the Government's interest in detaining him, and that Petitioner is not entitled to relief on his conditions of confinement claim. *Hope*, 972 F.3d at 325-29.

Petitioner is likewise not entitled to relief on his medical claim in light of the specific medical and psychiatric treatment he has received while detained and the concrete steps the facility has taken to protect Petitioner and those like him from COVID-19. In each instance in which

Petitioner raised an issue to the facilities medical staff – be it his bipolar disorder, back pain, heart issues, or asthma, he was either provided medical treatment or applicable medication to address or monitor the issue.  (*See* Documents 1-6 attached to ECF No. 33).  As nothing Petitioner has provided indicates that medical staff have been deliberately indifferent to any psychiatric or medical need he has actually brought to their attention, and as the facility has clearly taken ample steps to address COVID-19, Petitioner has failed to show an entitlement to habeas relief and his habeas petition must therefore be denied.  *Hope*, 972 F.3d at 330-31.  As Petitioner's habeas petition shall be denied, Petitioner's motion seeking a temporary restraining order shall be dismissed without prejudice as moot.

**III. CONCLUSION**

For the reasons expressed above, Petitioner's habeas petition (ECF No. 1) is DENIED WITHOUT PREJUDICE, and Petitioner's motion seeking a temporary restraining order (ECF No. 39) is DISMISSED WITHOUT PREJUDICE as moot.  An appropriate order follows.

Dated: October 29, 2020                    *s/Susan D. Wigenton*
                                            Hon. Susan D. Wigenton,
                                            United States District Judge